| | | |
|---|---|---|
| JOHN IBARRA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 10 C 4450 |
| CITY OF CHICAGO, a municipal | ) | |
| corporation, OFFICER MICHAEL | ) | |
| HILLMAN (Star #4216), OFFICER | ) | Judge Ruben Castillo |
| DANIEL MCDONALD (Star #1234), | ) | |
| SERGEANT SHAWN JOYCE (Star | ) | |
| #1993), SERGEANT BARBARA SYDEL | ) | |
| (Star #12148), JOHN AND JANE DOE | ) | |
| OFFICERS AND SUPERVISORS, in | ) | |
| their individual capacity, and MATTHEW | ) | |
| PRITZKER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

John Ibarra brings this action pursuant to 42 U.S.C. §§ 1983 and 1985(3) against the City of Chicago, Officers Michael Hillman and Daniel McDonald, Sergeants Shawn Joyce and Barbara Sydel, and John and Jane Doe Officers and Supervisors, (collectively, "Chicago Police Defendants"), and Matthew Pritzker, alleging that the Chicago Police Defendants violated his constitutional rights. (R. 23, Am. Compl.) Currently pending before the Court are the Chicago Police Defendants' motion to dismiss Counts I, II, III, IV, and VI of Ibarra's Amended Complaint (hereinafter, "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6), (R. 30, Defs.' Mot.), and Ibarra's Motion for Expedited Discovery. (R. 33, Pl.'s Mot. Exp. Disc.) For the reasons stated below, the Chicago Police Defendants' motion to dismiss is denied. Ibarra's motion for expedited discovery is granted in part and denied in part.

## RELEVANT FACTS

Ibarra is a citizen of the state of Illinois and has no known political affiliation. (R. 23, Am. Compl. ¶¶ 6-7.) Defendant City of Chicago is a municipality incorporated under the laws of the State of Illinois. (*Id.* ¶ 8.) Defendants Hillman, McDonald, Joyce, Sydel, and John and Jane Doe Officers and Supervisors are employees of the City of Chicago through the Chicago Police Department. (*Id.* ¶¶ 9-17.) Defendant Pritzker is a citizen of the State of Illinois and has known political affiliations through his family with the Democratic Party. (*Id.* ¶ 21.) The Pritzker family is very influential in the city of Chicago, with numerous locations bearing the Pritzker family name. (*Id.*)

On July 16, 2009, Ibarra was riding his bicycle home from work while Pritzker was driving an SUV in the area of North Avenue and Sedgwick Street in Chicago, Illinois. (*Id.* ¶¶ 22-23.) Pritzker was speeding and driving erratically, and came very close to hitting Ibarra on his bicycle. (*Id.* ¶ 24.) Ibarra tapped the door of Pritzker's SUV to alert him that he was driving too closely to Ibarra. (*Id.* ¶ 25.) Pritzker then began to hit Ibarra with his SUV, squeezed Ibarra up against the curb, and attempted to force Ibarra off the road. (*Id.* ¶ 26.) Ibarra then hit Pritzker's SUV with his bicycle lock. (*Id.* ¶ 28.) Pritzker, meanwhile, attempted to run over Ibarra with his SUV and hit the back wheel of Ibarra's bicycle with the SUV's grill. (*Id.* ¶ 29.) This caused Ibarra's bicycle to spin and the bicycle was forced underneath the SUV. (*Id.* ¶¶ 29-30.) Ibarra was flung to the driver's side of Pritzker's SUV. (*Id.* ¶ 31.) Pritzker drove away with the bicycle underneath his SUV at a speed of approximately 40-50 miles per hour. (*Id.* ¶ 32.) As Pritzker sped away, the bicycle dislodged from the SUV, causing one of the SUV's tires to pop. (*Id.* ¶¶ 32-33.) Pritzker continued to flee the scene with a flat tire. (*Id.* ¶ 34.)

Ibarra and witnesses called 911. (*Id.* ¶ 35.) A Chicago police officer arrived at the scene and told Ibarra that he would charge the driver, unknown at that time to be Pritzker, with attempted murder. (*Id.* ¶ 36.) A witness who followed Pritzker as Pritzker left the scene called 911 after locating Pritzker and waited for police officers to arrive so that Pritzker could not continue to flee the scene. (*Id.* ¶¶ 37-40.) Chicago police officers took Pritzker back to the scene of the incident where a number of other officers had arrived. (*Id.* ¶¶ 41-42.)

Upon questioning by the Chicago Police Defendants, Ibarra and other witnesses reported that Ibarra was the victim of a hit-and-run. (*Id.* ¶ 43.) The Chicago Police Defendants, however, then attempted to coerce and intimidate the witnesses to change their statements and asked Ibarra to change his statement about what had occurred. (*Id.* ¶¶ 44-45, 54.) According to Ibarra, the Chicago Police Defendants also altered reports about the incident, fabricated evidence to cover up Pritzker's assault and battery of Ibarra, and failed to conduct an adequate investigation so as to protect Pritzker because of his political connections and family's influence. (*Id.* ¶¶ 46, 52-53.) At least one of the Chicago Police Defendants stated that Ibarra "deserved what he got." (*Id.* ¶ 47.)

Ibarra was placed in the back of a squad car and was not free to leave. (*Id.* ¶ 48.) According to Ibarra, "Pritzker was the sole source of information provided to procure [Ibarra's] arrest as all of the witnesses at the scene informed the police that [Ibarra] was the victim of the incident." (*Id.* ¶ 80.) Pritzker received a traffic ticket and no criminal charges were filed against him. (*Id.* ¶ 50.)

Ibarra further alleges that the City of Chicago and the Chicago Police Department "have a pervasive and unconstitutional custom, practice, and policy of protecting people who are

politically connected and influential by condoning the actions of officers who turn a blind eye to crimes committed by people who are politically connected and influential, and failing to investigate, discipline or otherwise hold accountable its police officers for covering up evidence, and in doing so, Defendant City of Chicago condones and perpetuates such conduct by its officers." (*Id.* ¶ 55.)

## PROCEDURAL HISTORY

Ibarra initiated this action on July 16, 2010. (R. 1, Compl.) On September 1, 2010, Ibarra filed an amended complaint. (R. 23, Am. Compl.) Ibarra invokes 42 U.S.C. § 1983 ("Section 1983") as the basis for relief in Counts I and II. (*Id.* ¶¶ 57-62.) Specifically, Count I of the Complaint alleges that the Chicago Police Defendants' arrest of Ibarra was without probable cause and constitutes a false arrest. (*Id.* ¶ 58.) Count II alleges that the Chicago Police Defendants violated his First Amendment rights by arresting him without probable cause and because of Pritzker's political clout and affiliation. (*Id.* ¶ 64.) In both Counts I and II, Ibarra further asserts that the alleged misconduct was undertaken by the Chicago Police Defendants pursuant to the City of Chicago's *de facto* policy, practice, and/or custom of concealing and/or suppressing officer misconduct. (*Id.* ¶ 67.) In Count III, Ibarra invokes Section 1983 and 42 U.S.C. § 1985(3) ("Section 1985(3)"). (*Id.* ¶¶ 69-77.) Count III alleges that the Chicago Police Defendants conspired to protect Pritzker from being criminally charged for committing assault and battery upon Ibarra in violation of his First, Fourth, and Fourteenth Amendment rights. (*Id.* ¶¶ 70-72, 74-76.)

Ibarra also brings several state law claims against Defendants. Count IV alleges a state law claim for false arrest as to all Defendants. (*Id.* ¶¶ 78-81.) Count V is an assault and battery

claim against Pritzker. (*Id.* ¶¶ 84-91.) Count VI alleges a state law claim for intentional infliction of emotional distress as to all Defendants. (*Id.* ¶¶ 92-95.) Counts VII and VIII allege negligence and willful or wanton misconduct by Pritzker. (*Id.* ¶¶ 96-106.) Finally, Count IX is an indemnification claim against the City of Chicago. *(Id.* ¶¶ 107-109.)

The Chicago Police Defendants moved to dismiss Counts I, II, III, IV, and VI on September 30, 2010. (R. 30, Defs.' Mot.) The Chicago Police Defendants argue that Count I should be dismissed because the Chicago Police Defendants had probable cause to arrest Ibarra. (*Id.* at 2-5.) The Chicago Police Defendants further argue that Count II should be dismissed because Ibarra fails to allege that he engaged in protected speech. (*Id.* at 7-9.) To the extent that Ibarra alleges *Monell* claims against the City of Chicago, the Chicago Police Defendants argue that they should be dismissed because of the absence of a constitutional violation. (*Id.* at 9.) As to Count III, the Chicago Police Defendants argue that Count III should be dismissed because Ibarra has not established an underlying constitutional claim. (*Id.* at 9.) Finally, the Chicago Police Defendants argue that Counts IV and VI should be dismissed because a finding of probable cause is an absolute bar to these state law claims. (*Id.* at 9-10.)

## LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *Id.* Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to

provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526
F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atlantic Corp. v.
Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'
A claim has facial plausibility when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft
v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

Additionally, "a party may plead itself out of court by pleading facts that establish an
impenetrable defense to its claims." *Tamayo*, 526 F.3d at 1086 (citing *Massey v. Merrill Lynch
& Co.*, 464 F.3d 642, 650 (7th Cir. 2006)). Specifically, a party "pleads himself out of court
when it would be necessary to contradict the complaint in order to prevail on the merits." *Id.*
(citing *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006)). If a plaintiff provides
unnecessary facts in his complaint, the defendants may use those facts to show that he is not
entitled to relief. *Id.* (citing *McGready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006); *Jackson
v. Marion Cnty.*, 66 F.3d 151, 153-54 (7th Cir. 1995)).

## ANALYSIS

## I.  Section 1983 False Arrest and Unlawful Detention Claim (Count I)

Ibarra brings suit against the Chicago Police Defendants pursuant to Section 1983.
Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not itself provide substantive rights; rather, it is a vehicle for vindicating federal rights conferred elsewhere. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). To state a claim under Section 1983, a plaintiff must show that he was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682,687 (7th Cir. 2006).

In Count I, Ibarra asserts a claim pursuant to Section 1983 of false arrest and unlawful detention in violation of the Fourth Amendment of the United States Constitution. The Fourth Amendment protects the right of persons "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Any Fourth Amendment inquiry necessarily begins with a determination of whether a search or seizure actually occurred. *If* that question is answered in the affirmative, the next question is whether the seizure was unreasonable." *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *United States v. Watson*, 423 U.S. 411, 417-24 (1976)); *see also Woods v. City of Chi.*, 234 F.3d 979, 995-96 (7th Cir. 2001) (looking first at whether the arresting officers had probable cause to believe that the arrested individual had committed or was committing an offense and second at whether state or municipal law authorized the arresting officer to effect an arrest for the offense.). The existence of probable cause to arrest bars a Section 1983 suit for false arrest. *Morfin v. City of East Chi.* 349 F.3d 989, 997 (7th Cir. 2003); *see also McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009).

The determination of probable cause turns on whether a reasonable person would believe, based on the facts and circumstances known to the arresting officer *at the time*, that a crime had been or was being committed. *Devenpeck*, 543 U.S. at 153; *McBride*, 576 F.3d at 707; *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003); *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). "Consequently, as long as a reasonably credible witness or victim informs the police that [the suspect] has committed . . . a crime, the officers have probable cause to place the alleged culprit under arrest," *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999) (internal quotation omitted), "in the absence of evidence that the information, or the person providing it, is not credible." *Pasiewicz v. Lake Cnty. Forest Pres. Dist.*, 270 F.3d 520, 524 (7th Cir. 2001); *see also Woods*, 234 F.3d at 996 ("an identification of a report from a single, credible victim or eyewitness can provide the basis for probable cause."). If the eyewitness's information would lead an officer to be suspicious, the officer should pursue reasonable avenues of investigation and should not close his or her eyes to facts that would clarify the situation. *McBride*, 576 F.3d at 707. Nevertheless, once police officers have received information from a reasonably credible victim or eyewitness, they "have no constitutional obligation to conduct any further investigation before making an arrest." *Woods*, 234 F.3d at 997; *Spiegel*, 196 F.3d at 723.

Here, the parties do not contest that Ibarra was arrested. Rather, the Chicago Police Defendants argue that Ibarra's cause of action for false arrest should be dismissed because the factual allegations in Ibarra's Complaint establish that the Chicago Police Defendants had probable cause to arrest Ibarra. (R. 30, Defs.' Mot. at 2.) According to the Chicago Police Defendants, Ibarra's "admi[ssion] that he intentionally damaged Pritzker's vehicle by hitting it with a bicycle lock" precludes his Section 1983 claim for false arrest because the Chicago Police

Defendants had probable cause to arrest him for criminal damage to property. (R. 30, Defs'. Mot. at 4; R. 48, Defs.' Reply at 3.) The Chicago Police Defendants correctly point out that Illinois law permits an officer to arrest a person when "[h]e has reasonable grounds to believe that the person . . . has committed an offense." 725 Ill. Comp. Stat. 5107-2(1)(c). And, under Illinois law, the offense of criminal damage to property is established when a person "knowingly damages any property of another." 720 Ill. Comp. Stat. 5/21-1(1)(a). Accordingly, the Chicago Police Defendants argue that "by admitting his actual commission of a criminal offense," Ibarra has pleaded himself out of court. (R. 48, Defs.' Reply at 3-4.)

The Chicago Police Defendants mis-characterize the factual allegations in Ibarra's Complaint. Contrary to their arguments and on the facts alleged in the Complaint, which the Court views in the light most favorable to Ibarra, it is not clear that the Chicago Police Defendants knew *at the time* they placed Ibarra in the back of the squad car that Ibarra had hit Pritzker's SUV with his bicycle lock. The Complaint alleges that the officers spoke with Ibarra, an undetermined number of witnesses, and Pritzker. (R. 23, Am. Compl. ¶¶ 36, 43, 80.) The Complaint further alleges that witnesses reported to the Chicago Police Defendants that Ibarra had been the victim of a hit-and-run, (*id.* ¶ 43), but nowhere does the Complaint allege that either Ibarra or the eyewitnesses informed the Chicago Police Defendants that Ibarra had hit Pritzker's SUV with his bicycle lock. Additionally, although Ibarra alleges that, "Pritzker was the sole source of information provided to procure [Ibarra's] arrest," (*id.* ¶ 80), nothing in the Complaint informs the Court as to what Pritzker told the Chicago Police Defendants. On these factual allegations, the Court simply does not know whether anyone had informed the Chicago Police Defendants that Ibarra had hit Pritzker's SUV with his bicycle lock prior to arresting him. As

9

such, it is unclear that the Chicago Police Defendants knew *at the time* they placed Ibarra in the back of the squad car that he had committed a criminal offense for which they had probable cause to arrest him.

Undoubtedly, Ibarra has alleged some facts that tend to suggest that the Chicago Police Defendants may have had probable cause to arrest him, but, these facts do not establish an impenetrable defense to his Section 1983 claim. *See Tamayo*, 526 F.3d at 1086 (7th Cir. 2008) (noting that although plaintiff had alleged facts that made "her success on the merits less likely[, recovery was] still *plausible* under her complaint.") Upon further development of the factual record, the Chicago Police Defendants may ultimately be able to establish that they had probable cause to arrest Ibarra, but, at this stage of the proceedings, it is not implausible that they lacked knowledge about whether Ibarra had committed a criminal offense at the time they arrested him. The Court concludes that the Complaint does not establish that the Chicago Police Defendants had probable cause to arrest Ibarra. Accordingly, the Chicago Police Defendants' motion to dismiss Count I is denied.

## II.  First Amendment Retaliation (Count II)

In Count II, Ibarra asserts a claim pursuant to Section 1983 of First Amendment retaliation. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. amend. I. "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *Morfin*, 349 F.3d at 1005 (quoting *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000)). To establish a *prima facie* case of First Amendment retaliation, a plaintiff must show that (1) he

engaged in activity that was constitutionally protected; (2) but for the protected speech, the defendants would not have taken the same action; and (3) he suffered a deprivation likely to deter First Amendment activity in the future. *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 501 (7th Cir. 2010); *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

### A.     Constitutionally Protected Activity

The Chicago Police Defendants argue that Count II should be dismissed because Ibarra has failed to allege that he was engaged in constitutionally protected activity. Specifically, they argue that Ibarra fails to allege that "he engaged in any protected speech. Indeed, he does not allege that he spoke at all as it relates to this claim." (R. 30, Defs.' Mot. at 7.) The Chicago Police Defendants rely on *Wernsing v. Thompson* where the Seventh Circuit stated in dicta that in the "retaliation context, speakers simply may not invoke the protections of the First Amendment based on unexpressed viewpoints or un-uttered thoughts." 423 F.3d 732, 753 (7th Cir. 2005).

In the Complaint, Ibarra alleges that the Chicago Police Defendants "caused [Ibarra] to be falsely arrested, and unlawfully detained . . . because [of] Pritzker's political clout and affiliation in violation of [Ibarra's] First Amendment rights." (R. 23, Am. Compl. ¶ 64.) And, in response to the arguments raised by the Chicago Police Defendants, Ibarra argues that his Complaint is premised on the allegation that he "was retaliated against on the basis of his lack of political affiliation or clout[.]" (R. 47, Pl.'s Resp. at 10.) In support, Ibarra relies on cases addressing political patronage in hiring or claims based on actual political activities or speech by the plaintiff. *See, e.g., Hermes v. Hein*, 742 F.2d 350, 353 n.3 (7th Cir. 1984); *Morfin*, 349 F.3d at 1005; *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 989-90 (N.D. Ill. 2009) (denying

11

motion to dismiss where plaintiff alleged he was a vocal supporter of defendant's political opponent). The plaintiffs in these cases actually expressed or engaged in some conduct to express their political affiliation or clout, however, and so they do not help Ibarra's argument.

The Court agrees with the Chicago Police Defendants that Ibarra's Complaint and response brief are not helpful in identifying the constitutionally protected activity that Ibarra alleges he engaged in that led to the retaliation. Notwithstanding Ibarra's arguments, and viewing the facts in the light most favorable to Ibarra as the Court must on a motion to dismiss, Ibarra has alleged that he called 911 and reported to the Chicago Police Defendants that he was a victim of a hit-and-run. (R. 23, Am. Compl. ¶¶ 35, 43.) The reporting of a crime to police officers "constitutes an exercise of the First Amendment right to petition the government for the redress of grievances." *Meyer v. Bd. of Cnty. Comm'rs of Harper Cnty.*, 482 F.3d 1232, 1243 (10th Cir. 2007) (internal quotations omitted; quoting *Estate of Morris v. Dapolito*, 297 F. Supp. 2d 680, 692 (S.D.N.Y. 2004)); *see also Rossetti v. Wascher*, No. 07-4907, 2011 WL 824599, at *10 n.9 (N.D. Ill. Mar. 3, 2011) (noting that parties did not contest that the reporting of criminal activity to 911 or directly to police officers was not protected speech). When a crime victim reports that crime to a police officer, as Ibarra alleges he did here, he is engaging in constitutionally protected activity. *Meyer* 482 F.3d at 1243. Accordingly, Ibarra has sufficiently pled facts showing that he engaged in constitutionally protected activity.[1]

---

[1] The Chicago Police Defendants raise arguments concerning the applicability of the "public concern" test to the present case. The "public concern" test is used in the public employee context to determine whether speech by a public employee is constitutionally protected. *See Connick v. Myers*, 461 U.S. 138. 147 (1983). Because the Court finds that Ibarra engaged in constitutionally protected activity, the Court does not address these arguments at this time.

### B.    But-for Causation

Next, to survive a motion to dismiss on a First Amendment retaliation claim, a plaintiff must also plead facts that plausibly suggest that but-for the protected speech, the defendants would not have taken the same action. *Kodish*, 604 F.3d at 501; *see also Fairley v. Andrews*, 578 F.3d 518, 525-26 (7th Cir. 2009) (decisions stating that a plaintiff need only show that speech was a motivating factor in defendant's decision do not survive the Supreme Court's decision in *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343 (2009), which held that plaintiffs must demonstrate but-for causation in all suits under federal law.) In other words, Ibarra must plead facts showing that the Chicago Police Defendants arrested him because of the protected First Amendment activity he engaged in.

But-for causation may be established through a direct method of proof, whereby the focus is on "whether the evidence 'points directly' to a discriminatory reason for the [defendant's] action." *Kodish*, 604 F.3d at 501 (quoting *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008)). Direct proof of retaliation includes near-admissions about the discrimination, as well as "circumstantial evidence which suggests discrimination through a longer chain of inferences." *Id.* at 501. "Circumstantial evidence may include 'suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other [individuals] in the protected group." *Burruss v. Cook County Sheriff's Office*, No. 08-6621, 2011 WL 856635, at *8 (N.D. Ill. Mar. 9, 2011) (quoting *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009)).

Here, Ibarra alleges that upon one Chicago police officer's arrival at the scene, and before it became known that Pritzker was the driver of the SUV, that officer told Ibarra he would charge the SUV driver with attempted murder. (R. 23, Am. Compl. ¶ 36.) After Pritzker was brought

back to the scene of the incident, (*id.* ¶ 41), at least one of the officers stated that Ibarra "deserved what he got." (*Id.* ¶ 47.) Ibarra was then placed in the back of the squad car. (*Id.* ¶ 48.) The timing of Ibarra's arrest, which occurred after Pritzker's identity became known to the Chicago Police Defendants, in conjunction with the statements police officers made to Ibarra both before and after the Chicago Police Defendants became aware of Pritzker's identity plausibly raise the inference that but-for Ibarra's attempt to report Pritzker's criminal activity, the Chicago Police Defendants would not have arrested Ibarra.

### C. Deprivation

Finally, to properly allege a First Amendment retaliation claim, Ibarra must also allege that he suffered a deprivation likely to deter First Amendment activity in the future. *Kodish*, 604 F.3d at 501. An arrest is an activity that is likely to deter First Amendment activity in the future. *See, e.g., Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000) ("[a]ny deprivation under color of law that is likely to deter the exercise of free speech . . . is actionable"); *Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 916 (N.D. Ill. 2010) (noting that defendants did not dispute that arrests and criminal prosecutions undertaken against plaintiffs are deprivations that are likely to deter the exercise of First Amendment activity); *Rossetti*, 2011 WL 824599, at *10 n.10 (observing that an arrest is conduct that will always satisfy this element). As previously noted, the parties do not contest that Ibarra was arrested. Accordingly, Ibarra has sufficiently alleged that he suffered a deprivation, in the form of an arrest, that is likely to deter First Amendment activity in the future.

Construing all facts in Ibarra's favor, the Court finds that Ibarra has alleged facts that plausibly give rise to a First Amendment violation. Given the complexity of the legal issues, the

parties' cursory treatment of the issues, and the current stage of the litigation, the Court declines to dismiss Count II at this time.

## III.  *Monell* Claims (Counts I and II)

Ibarra also asserts *Monell* claims as to Counts I and II. (R. 47, Pl's. Resp. at 13.) *Monell* teaches that "a local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section] 1983." *Id.* To establish an official policy or custom, Ibarra must show that his constitutional deprivation was caused "by (1) the enforcement of an express policy of the [City of Chicago], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010) (quoting *Latuszkin v. City of Chi.*, 250 F.3d 502, 504 (7th Cir. 2001)).

Ibarra alleges that the misconduct described in the Complaint was undertaken pursuant to the Chicago Police Department's policy, practice, or custom of concealing or suppressing officer misconduct. (R. 23, Am. Compl. ¶¶ 60-61, 66-67.) Defendants argue that to the extent Ibarra has asserted *Monell*-type allegations against the City of Chicago, these claims should be dismissed because Ibarra has not established an underlying constitutional deprivation. (R. 30, Defs.' Mot. at 9; R. 48, Defs.' Reply at 7.) Without an underlying constitutional injury, a municipality may not be found liable. *Durkin v. City of Chi.*, 341 F.3d 606, 615 (7th Cir. 2003). Because the Court has found that Ibarra has pleaded facts sufficient to allege a constitutional

deprivation of his Fourth and First Amendment rights, however, the Court rejects the Chicago Police Defendants' arguments. Additionally, because Defendants fail to develop additional arguments as to why the Court should dismiss Ibarra's *Monell* claims, the Court denies their motion to dismiss these claims at this time.

## IV. Conspiracy (Count III)

In Count III, Ibarra alleges that Pritzker and the Chicago Police Defendants conspired to deprive him of his First, Fourth, and Fourteenth Amendment rights, in violation of Sections 1983 and 1985(3). (R. 23, Am. Compl. ¶¶ 69-76.) To state a Section 1983 claim through a conspiracy theory, a plaintiff must allege that "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007) (quoting *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)). Neither "a bare allegation of conspiracy," nor "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her [,] . . . [is] . . . enough to survive a motion to dismiss for failure to state a claim." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). A plaintiff must allege "the parties, the general purpose, and the approximate date of the conspiracy." *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006). A plaintiff must also indicate the nature of the alleged conspiratorial agreement. *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002); *see also Gardunio*, 674 F. Supp. 2d at 986 (allegations that defendant officers agreed to effect unlawful arrest of plaintiff, and that, in furtherance of said agreement, officers unlawfully detained and fabricated evidence against plaintiff, and withheld exculpatory evidence, were sufficient to survive a motion to dismiss).

Defendants argue that Ibarra's cause of action for conspiracy under Section 1983 should be dismissed because Ibarra has not established an underlying constitutional claim, and therefore there is no basis for liability under Section 1983. (R. 30, Defs.' Mot. at 9). A plaintiff's failure to establish that a constitutional injury occurred forecloses relief on that plaintiff's conspiracy claim. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (citing *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416 (7th Cir. 2000)). Here, the Court previously found that Ibarra has alleged sufficient facts to survive a motion to dismiss on his Section 1983 claims for violations of his Fourth and First Amendment rights. Accordingly, relief on the basis of conspiracy is not necessarily foreclosed.

Additionally, Ibarra has pleaded sufficient facts to allege a conspiracy in which Pritzker agreed with the Chicago Police Defendants to deprive Ibarra of his constitutional rights to be free from false arrest and from violations of his First Amendment rights. (R. 23, Am. Compl. ¶¶ 73-76.) Ibarra has alleged the parties involved in the alleged conspiracy, the general purpose–to deprive Ibarra of his constitutional rights–and the approximate date of the conspiracy. In further support of his conspiracy claim, Ibarra provides the following factual allegations: the Chicago Police Defendants attempted to protect Pritzker by covering up the evidence against Pritzker, (*id.* ¶ 44), coercing and intimidating witnesses to change their statements, (*id.* ¶¶ 44, 54), fabricating evidence, (*id.* ¶ 52), and failing to conduct an adequate investigation into the incident. (*Id.* ¶ 53.) Finally, Ibarra alleges that Pritzker was a willful participant "in the effort to deprive [Ibarra] of his rights in order to protect himself and cover up his crimes." (*Id.* ¶ 73.) As a whole, these allegations plausibly state a Section 1983 conspiracy claim. Accordingly, the Chicago Police Defendants' motion to dismiss Count III is denied.

## V.  False Arrest/False Imprisonment and Intentional Infliction of Emotional Distress State Law Claims (Counts IV and VI)

In Count IV, Ibarra asserts a state law claim for false arrest/false imprisonment. (R. 23., Am. Compl. ¶¶ 78-83.) In Count VI, Ibarra asserts a state law claim for intentional infliction of emotional distress. (*Id.*, ¶¶ 92-95.) The Chicago Police Defendants argue that Ibarra's state law false arrest/false imprisonment and intentional infliction of emotional distress claims should be dismissed for the same reasons that his Section 1983 claims should be dismissed. (R. 30, Defs.' Mot. at 9.) Specifically, the Chicago Police Defendants argue that a finding of probable cause is an absolute bar to Ibarra's state law claims. (*Id.*) Alternatively, the Chicago Police Defendants argue that the Court should refuse to exercise its supplemental jurisdiction over Ibarra's state law claims because Ibarra has not set forth any viable federal claims. (*Id.* at 10.) Because the Court has found that Ibarra pleaded facts sufficient to allege constitutional deprivations of his Fourth and First Amendment rights, the Court rejects the Chicago Police Defendants' arguments and declines to dismiss Counts IV and VI at this time.

## VI.  Motion for Expedited Discovery

Ibarra moves for expedited discovery pursuant to Rules 26(d) and 33(a). As an initial matter, it is unclear to the Court why Ibarra invokes Rule 33(a) as a basis for his motion. Rule 33(a) allows parties to serve no more than twenty-five interrogatories on another party. Fed.R.Civ.P. 33(a). A party may serve additional interrogatories with leave of the Court. *Id.* Here, Rule 33(a) is inapplicable because Ibarra has only requested that the Chicago Police Defendants be served with three interrogatories.

Rule 26(d), clearly applicable here, allows for discovery before the parties have conferred, as required by Rule 26(f), when authorized by a court order. Fed.R.Civ.P. 26(d)(1). A

court has wide discretion in managing the discovery process. *Merrill Lynch v. O'Connor*, 194

F.R.D. 618, 623 (N.D. Ill. 2000). While there is no set test or criteria for evaluating whether

expedited discovery is necessary, courts have "developed 'two common judicial approaches' to

assessing requests for expedited discovery." *Landwehr v. Fed. Deposit Ins. Corp.*, No. 09-716,

2010 WL 2572077, at *2 (D.D.C. June 28, 2010) (quoting *Humane Soc'y of U.S. v. Amazon.com,

Inc.*, No. 07-623, 2007 WL 1297170, at *2 (D.D.C. May 1, 2007)).

The first approach, oftentimes referred to as the *Notaro* approach, requires that a party

show: "(1) irreparable injury; (2) some probability of success on the merits; (3) some connection

between the expedited discovery and avoidance of the irreparable injury; and (4) some evidence

that [the] injury that will result without expedited discovery looms greater than the injury that the

defendant will suffer if the expedited relief is granted." *Merrill Lynch*, 194 F.R.D. at 623 (citing

*Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)). A second approach directs courts to

evaluate a motion for expedited discovery "on the entirety of the record to date and the

reasonableness of the request in light of all the surrounding circumstances." *Id.* at 624; *accord*

*Landweher*, 2010 WL 2572077, at *2; *Sheridan v. Oak St. Mortg.*, 244 F.R.D. 520, 521-22 (E.D.

Wisc. 2007).

District courts within the Seventh Circuit have applied the latter approach, as have many

other district courts. *See Merrill Lynch*, 194 F.R.D. at 623; *Sheridan*, 244 F.R.D. at 522; *Arista

Records v. Does 1-19*, 551 F. Supp. 2d 1, 6-9 (D.D.C. 2008) (denying plaintiff's motion to quash

subpoena and vacate expedited discovery order and refusing to apply an alternative standard in

deciding whether to permit expedited discovery); *see also* 8A Charles Alan Wright, Arthur R.

Miller, Mary Kay Kane, & Richard L. Marcus, *Federal Practice and Procedure*, § 2046.1 (3d ed.

1998) ("it is implicit that some showing of good cause should be made to justify" an expediting discovery order). In applying the "reasonableness" standard, factors a Court may consider include "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Landwehr*, 2010 WL 2572077, at *2.

Here, a preliminary injunction is not pending. Rather, Ibarra "seeks expedited discovery for the limited purpose of determining the identity of the proper parties to this action." (R. 33, Pl.'s Mot. Exp. Disc. at 2.) Ibarra argues that the information sought–the "identity of the officers on the scene and supervisors who approved of their conduct"–is within the control of the City of Chicago. (*Id.*) To that end, Interrogatory 1 requests that the City of Chicago identify those officers and/or employees of the Chicago Police Department who were at the scene of the incident. (*Id.*, Ex. 1 at 2.) Interrogatory 2 requests that the City of Chicago identify supervisors who participated in any manner in approving any Chicago Police Officers' actions on July 16, 2009. (*Id.*) Interrogatories 1 and 2 are narrowly tailored in scope and seek to ascertain the identities of the Doe defendants named in Ibarra's Complaint. Interrogatory 3, however, is overly broad and burdensome as it requests the City of Chicago to "[s]tate in full and fair detail each and every individual employed by the City of Chicago and/or Chicago Police Department who did not order the arrest of Defendant Pritzker." (*Id.*) Interrogatory 3 is so overbroad that it seeks wholly irrelevant matter. *See Merrill Lynch*, 194 F.R.D. at 623 (rejecting request for expedited discovery where all requests were overbroad in scope).

Ibarra's first and second requests for documents are also narrowly tailored in scope as they seek information that will allow Ibarra to determine the identities of those officers and supervisors who were involved in the incident. (*Id.*, Ex. 2 at 2.) Ibarra fails to demonstrate the reasonableness of his other requests which seek information that goes beyond his need to identify the Doe defendants. For example, Request for Production of Documents 8 requests "[a]ll 911 calls for July 16, 2009 for the area of North Avenue and Sedgwick." (*Id.*, Ex. 2 at 3.) Ibarra has not provided a justification for seeking this information on an expedited basis.

On the basis of the entire record, the narrow scope of Ibarra's first and second interrogatories as well as his first and second requests for production of documents, and the purpose for which Ibarra seeks expedited discovery, the Court finds Ibarra's request for expedited discovery to be reasonable. *See Arista Records v. Does 1-19*, 551 F. Supp. 2d 1, 6-9 (D.D.C. 2008) (good cause existed to permit record companies to conduct expedited discovery by serving subpoena on non-party Internet Service Provider seeking identifying information for Doe defendants). Accordingly, the Court grants Ibarra's motion for expedited discovery as to Interrogatories 1 and 2, and Requests for Production of Documents 1 and 2. As to the remainder of Ibarra's discovery requests, the Court denies his motion for expedited discovery.

## CONCLUSION

For the reasons stated above, the Chicago Police Defendants' Motion to Dismiss (R. 30) is DENIED. Ibarra's Motion for Expedited Discovery (R. 33) is GRANTED in part and DENIED in part.

The parties are requested to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties are authorized to proceed with discovery.

All discovery in this case shall be completed by February 15, 2012. The parties shall appear for a status hearing on October 11, 2011, to set a firm trial date.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated:** September 28, 2011